## LOGAN & PRESTON'S APPEAL.

Where merchandise is sold for cash and a check is taken in payment, which would have been paid if immediately presented, but is not paid when deposited for collection, the sale cannot be rescinded and the goods reclaimed in the hands of a purchaser from the vendee.

Appeal from Common Pleas No. 2 of Philadelphia County. In Equity. No. 174 January Term, 1880.

Logan and Preston sold a quantity of corn to Smith, Howell & Co, for $24,000. At one o'clock, Sept. 22nd, 1879, the clerk

of Logan & Preston delivered the shipping receipts to Smith, Howell & Co., and received their check for $20,571.43 on the Commercial Bank and immediately deposited it for collection. Smith, Howell & Co. had previously agreed to sell corn to Wm. Brockie, and at quarter-past two o'clock of the same day delivered the shipping documents to Wm. Brockie, and received some cash and Brockie's check for $20,000, which was deposited in the Commercial Bank to the credit of Smith, Howell & Co. When Smith, Howell & Co. gave their check to Logan & Preston their account was not good for the amount, but it would have been paid by the bank if presented, as the bank allowed them to overdraw, expecting them to make it good during the day. The bank charged to their account a note for $15,000 that fell due the same day, Sept. 22, 1879. The check in favor of Logan & Preston was not paid and they (Logan & Preston) then brought their bill in equity against Smith, Howell & Co., The Commercial Bank and Wm. Brockie, seeking to have the $20,000 in Brockie's check applied to their claim.

. The Court below dismissed the bill in the following opinion, per

MITCHELL, J.:

The argument for the plaintiffs was principally rested on the ground that as between plaintiffs and Smith, Howell & Co., the plaintiff's title never passed and that, therefore, when Smith, Howell & Co. sold to Brockie, the latter being an innocent purchaser without notice, took a good title; but that it was *the plaintiff's title*, and therefore the plaintiffs may follow the purchase money from Brockie as long as it can be identified or at least until it passes into the hands of one who has made advances, or done some act to his detriment on the faith of it. This argument rests upon the further theory that in a civil action actual fraudulent intent not to pay is immaterial, and the effect of failure to pay is the same whether it be through unexpected inability or premeditated fraud.

That this is the law in some other States may be conceded, but we think the settled doctrine in Pennsylvania is different. In Smith vs. Smith, 9 Harris, 367, it was held that title passed

by delivery, and there is no right to rescind, unless there has been actual fraud by some artifice, intended and fitted to deceive, practiced by the purchaser in procuring the property. "The right of reclamation after delivery exists only where an action of deceit would lie; Lowrie J., page 372. And in Bockentoss vs. Speicher, 7 Casey, 326, Woodward J., referring to Smith vs. Smith, says :—"Where there is a sale of goods and delivery of possession, even though the buyer intends at the time not to pay for them, and conceals his insolvency from the vendor, it is not a cheat that will avoid the sale."

It is not contended by the plaintiffs that there was any actual fraudulent intent; much less any artifice on the part of Smith, Howell & Co. They were in good credit when the purchase was made; they gave the check in good faith, expecting it to be paid by the bank, and in fact it would have been considered good, and paid by the bank, had it been presented before the close of business hours on the day it was given. Upon the facts, and under the principle of the cases above cited, we think it is clear that the title to the corn passed to Smith, Howell & Co., and that it was their title, and not the plaintiffs', which passed to Brockie. Plaintiffs then became creditors of Smith, Howell & Co. for the price, but their title to and lien on the goods was gone, and they had no higher right than any other creditor of Smith, Howell & Co. to claim the purchase money from Brockie as their property in equity any more than at law.

There remains, however, another class of cases, within which this might be thought to fall. A sale for cash implies that the delivery and the payment are to be concurrent acts, and if the goods are handed over on the expectation that the cash will be concurrently paid, a failure so to pay is a breach of the condition, which deprives the delivery of its effect, and the title does not pass. It is said in Leedom vs. Philips, 1 Yeates, 527, that in such case the vendor may retake the goods, even by force, and this statement has been quoted without dissent in Bowen vs. Burk, 1 Harris, 149, and Bockentoss vs. Speicher, 7 Casey, 326. It may be doubted whether this is not rather a strong statement of law, but whether it be

or not, certainly the vendor may reclaim the goods by replevin, even though they have been mingled with the purhaser's; Henderson vs. Lauck, 9 Harris, 359. But even on a sale for cash, an unqualified delivery, not procured by artifice or fraud, will pass the title though the money be not paid. "Even if the contract be for a cash sale," says Strong, J., in Welsh vs. Bell, 8 Casey, 17, "if the thing agreed to be sold, be delivered without payment, the property passes to the vendee."

The only exception to this rule appears to be where the delivery is procured by fraud or deceit; Harris vs. Smith, S. & R, 20; Carson vs. Shantz, 3 Philadelphia, 47. The latte case may be thought to go a little further than the principle above stated, for it is there said, "When, however, the delivery is made in reliance upon the contemporaneous payment, which turns out not to have been actually made, the intention to waive the lien will be negatived, and possession may be taken as if no delivery had occurred." But in this case, as in Harris vs. Smith, upon which it was expressly rested, there was no artifice or fraud in procuring the delivery. "There was covin," says Hare, J., "for no artifice can well be more unwarrantable than to get possession of goods by promising to pay cash, and then seek to set off outstanding claims acquired for the purpose; thus depriving the seller of what may have been the chief inducement to the sale." Moreover, here was an absolute failure or refusal to perform the act on the faith of which the delivery was made. The sale was to be for what was agreed to be equivalent to cash, viz., drafts at sight, to be accepted immediately on presentation. On the faith of that agreement the vendor delivered the goods, but on presentation of the drafts acceptance was refused, and the purchaser gave notice that he intended to set off certain outstanding notes of the vendor, which had been bought up for the purpose. Here was an entire breach of the condition on which the delivery had been made. We can not, therefore, regard Carson vs. Shantz as making any distinction or exception to the general rule that title passed by delivery, unless it be conditioned upon some concurrent act, which is not done, or if the delivery be absolute, that it was procured by fraud.

It becomes important, therefore, to consider whether the

facts of this case bring it within the exceptions to the fore-
going rule. As already stated, it is not claimed that there
was any fraudulent intent, in fact, upon the part of Smith,
Howell & Co. when they gave the check, but it was strongly
urged by the plaintiffs' counsel that the check, not being paid,
was nothing—no more than a blank piece of paper, and having
been taken as a representative of cash, when it lost that char-
acter, the effect was the same as if nothing at all had been
given. But this view overlooks the important and controlling
fact that when the check was given it not only was regarded
by both parties as cash, but it was in fact cash or its equiva-
lent, for had it been presented to the bank it would have been
paid. It was not only not a case of fraud, it was not even a
case of mistake, which in equity might be equally efficient in
avoiding the effect of the action of the parties. It was like
the case of payment in notes of a bank in good repute at the
time, but which closed its doors before the notes were presented
for redemption in legal money. Certainly, had the payment
by Smith, Howell & Co. been made in notes of this kind, it
could not be contended that the subsequent failure of the bank
would make it any the less a valid cash payment, and we
think that under the circumstances, the payment by a check
good at the time was equivalent to a payment in money, so far
as respects the passing of the title to the goods.

There is, however, another ground on which we think the
equity of the Commercial Bank at least equal to the plain-
tiffs'. It is uncontroverted that Smith, Howell & Co. were in
good credit up to and on the day of this transaction, and that
their checks were always paid by the bank without reference
to the state of their account, in reliance upon the course of
business by which their account was always made good before
the close of banking hours of the same day. The third para-
graph of the answer is:—"The said Smith, Howell & Co. had
been for many years depositors with your respondent, and
their credit during that time had been good. The balances
in their favor had, from time to time been large, and the
respondent had so much confidence in their solvency and
integrity that their checks drawn upon it were paid without
reference to the state of their account at the time. Very fre-

quently, before their failure, their account had been overdrawn, but was always made good before the close of banking hours on the days of such overdrafts. Relying upon their good faith and integrity, and upon the belief and expectation based upon the previous dealings of said Smith, Howell & Co. with it that they would daily make sufficient deposits to reimburse the respondent for its payment on, and proper charges against them in their account, the respondent permitted this to be done."

This does not, perhaps, state as explicitly as it might, that there was *an agreement* to advance money, or pay checks, on the consideration that the account should be made good the same day; but we think that is the plain intent of the averment, and it is in accordance with the evidence in the case.

That such a course of business is evidence of an agreement will hardly be questioned; but in a case in principle quite similar to this, the Supreme Court of the United States has held that such an agreement ought to be implied:—"There does not, indeed, appear to have been any express agreement that these balances should not be immediately drawn for, but it may be implied from the manner in which the business was conducted; and if the accounts show that it was their practice and understanding to allow them to stand and await the collection of the paper remitted, the rights of the parties are the same as if there had been a positive and express agreement; and such mutual indulgence on these balances would be a valid consideration, and like the actual advance of money, give the plaintiff in error a right to retain the amount due on closing the account;" Taney, C. J., in Bank of Metropolis vs. New England Bank, 1 Howard, 239.

Treating the course of business set out in the answer as equivalent to an agreement by the bank to pay the checks of Smith, Howell & Co. without regard to the state of their account at the time of presentation, upon the faith of deposits to be made before the close of banking hours, by which the account should be made good, it is plain that the Commercial Bank gave consideration for the $20,000 check of Mr. Brockie

deposited by Smith, Howell & Co., for the answer sets forth, in paragraph 3, that during the day the bank paid out upon checks of Smith, Hewell & Co. the sum of $22,825, and even with the Brockie check the account is still overdrawn.

Bill dismissed.

---

Logan & Preston then appealed to the Supreme Court, complaining of the dismissal of their bill.

*R. C. McMurtrie* and *M. P. Henry, Esqs.*, for appellants, cited Peterson vs. Bank, 52 Pa., 209 ; McCormick vs. Trotter, 10 S. & R., 96 ; Henderson vs. Lauck, 21 Pa., 359 ; Russell vs. Hankey, 6 D. & East, 12; Ex parte Dumas, 2 Vesey, 585; Small vs. Atwood, Young, 507 ; Ernest vs. Croysdale, 2 DeG., F. & J., 175 ; Bank vs. King, 57 Pa., 202 ; Frazier vs. Bank, 8 W. & S., 18 ; Stair vs. Bank, 55 Pa., 364; Arnold vs. Shade, 3 Phila., 82; Bank vs. Tyler, 3 W. & S., 373 ; Musson vs. Waite, 17 Mass., 560 ; Taylor vs. Plummer, 3 Maule & S., 562 ; Davies vs. Thomas, 2 Young & Coll, 234 ; De la Chaumont vs. Bank, 9 B. & Cr., 208 ; Curry vs. Missa, L. R., 10 Exch., 153 ; Bank vs. Bank, 1 Howard, 234 ; Boyd vs. Emerson, 2 A. & E., 185 ; Barnett vs. Brandao, 6 M. & Gr., 668.

*R. N. Wilson* and *J. W. Paul, Esqs.*, for the bank, cited Bayard vs. Shunk, 1 W. & S., 92 ; Waldron vs. Haupt, 52 Pa., 408 ; Haak vs. Linderman, 64 Pa., 499 ; Walker vs. Geisse, 4 Wh., 252 ; Kirkpatrick vs. Muirhead, 16 Pa., 117 ; Johnson vs. Roberts, 10 Ch. Ap., L. R., 505 ; Currie vs. Misa, 10 Exch. L. R., 153.

The Supreme Court affirmed the decree of the Common Pleas on February 21st, 1881, in the following opinion,

PER CURIAM :

We affirm this decree upon the able and exhaustive opinion of the learned judge of the Court below. No point was made there or here as to the jurisdiction of a Court of Equity. If, as the plaintiffs contend, the proceeds of the sale by Smith, Howell & Co. were their property and could be identified and followed, then it would seem that the plaintiffs had an adequate remedy at law in an action of assumpsit for money had and received. We express no opinion, but mention it that it may

not be inferred that we mean to uphold the jurisdiction in such a case.

Decree affirmed and appeal dismissed at the costs of the appellant.